· RECEIVED
BY _____ Hk
MAY 06 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| **BECKY DURIO and EVELYN BLANKS** | **6:08cv0615  LO** |
| versus | |
| **SLM FINANCIAL CORPORATION, SALLIE MAE, INC., RYAN ALLABAUGH, JANE DOE**–a collector employed by SLM **FINANCIALCORPORATION using the fictitious name of "MS. BROWN," and DOES 1-50, inclusive** | MAGISTRATE: |

## ORIGINAL COMPLAINT

### INTRODUCTION

1. This is an action for actual and statutory damages brought by Plaintiffs, **BECKY DURIO and EVELYN BLANKS** against Defendants, **SLM FINANCIAL CORPORATION, SALLIE MAE, INC., RYAN ALLABAUGH, JANE DOE**–a collector employed by SLM FINANCIAL **CORPORATION using the fictitious name of "MS. BROWN," and DOES 1-50**, for violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*) and Louisiana Tort Law (La.Civ.Code art. 2315 *et seq.*). The FDCPA prohibits debt collectors from engaging in abusive, deceptive, and unfair practices, and Louisiana Tort Law provides recovery to those aggrieved or damaged by the intentional, reckless, or negligent actions of others.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1337, and 28 U.S.C. § 1331. Declaratory relief is available under 28 U.S.C. §§ 2201 and 2202. Venue in this district is proper in that the defendants transact business here and the conduct complained of occurred here.

## PARTIES

3. Plaintiff, **BECKY DURIO**, is a natural person residing in Opelousas, Louisiana, from whom Defendants attempted to collect a debt.

4. Plaintiff, **EVELYN BLANKS**, is a natural person residing in Stephenville, Texas, from whom Defendants attempted to collect a debt.

5. Defendant, **SLM FINANCIAL CORPORATION**, is a foreign corporation licensed to do and currently doing business in the state of Louisiana. Its principal business establishment in Louisiana is located at 5615 Corporate Boulevard, Baton Rouge, Louisiana 70808. **SLM FINANCIAL CORPORATION** is in the business of originating, buying, selling, and servicing student and consumer loans. **SLM FINANCIAL CORPORATION** is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

6. Defendant, **SALLIE MAE, INC.**, is a foreign corporation licensed to do and currently doing business in the state of Louisiana. Its principal business establishment in Louisiana is located at 5615 Corporate Boulevard, Baton Rouge, Louisiana 70808. **SALLIE MAE, INC.** is in the business

of originating, buying, selling, and servicing student and consumer loans. **SALLIE MAE, INC.** is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

7. Defendant, **RYAN ALLABAUGH**, is an employee of Defendant, **SALLIE MAE, INC.**. Upon information and belief, **RYAN ALLABAUGH** perpetrated some or all of the wrongful acts alleged in this complaint, is responsible in some manner for the matters alleged in this complaint, and is jointly and severally liable to Plaintiffs.

8. Defendant, **JANE DOE** is an employee of **SLM FINANCIAL CORPORATION** using the fictitious name of **"MS. BROWN."** Upon information and belief, **JANE DOE** perpetrated some or all of the wrongful acts alleged in this complaint, is responsible in some manner for the matters alleged in this complaint, and is jointly and severally liable to Plaintiffs. The true identity of this defendant is unknown. As such, she is being sued under the above-mentioned fictitious identity. Plaintiffs will seek leave of court to amend the complaint to reflect this defendant's true identity once that identity is discovered.

9. **DOES 1-50** are persons or entities whose true names and capacities are presently unknown to Plaintiffs and who are thus sued under fictitious names. Upon information and belief, each of these fictitiously named defendants perpetrated some or all of the wrongful acts alleged in this complaint, is responsible in some manner for the matters alleged in this complaint, and is jointly and severally liable to Plaintiffs. Plaintiffs will seek leave of court to amend the complaint to include the true identities of the fictitious defendants, **DOES 1-50,** when ascertained.

10. At all pertinent times, each defendant was the employee of each of the other defendants and was acting within the course and scope of that employment. The defendants are jointly and severally liable to the plaintiffs.

## FACTUAL ALLEGATIONS

11. Around May 2006, **SLM FINANCIAL CORPORATION**, began a campaign of harassment, intimidation, abuse, and shocking and appalling behavior in its attempts to collect an outstanding Career Training loan debt of Plaintiff, **BECKY DURIO**. The loan was co-signed by Plaintiff, **EVELYN BLANKS–BECKY DURIO's** mother.

12. Both **BECKY DURIO** and **EVELYN BLANKS** were recipients of the harassing, intimidating, abusive, and shocking and appalling behavior, which was seemingly designed to violate nearly all substantive provisions of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*) and the Louisiana Law governing Intentional and Negligent Infliction of Emotional Distress. The harassing, intimidating, abusive, and shocking and appalling collection activities were systematic, persistent, and lasted until approximately January 2008.

13. In September - October 2006, **MS. DURIO** received repeated collection calls on her cell phone during work hours at her place of work, at the time, Attorney John Mouton's office. The incessant calling to Ms. Durio's cell phone during work hours persisted and worsened despite her advising **SLM FINANCIAL CORPORATION** collectors that her receiving calls at work was a significant problem for her employer. At this point, because of her employer's escalating

aggravation with her cell phone incessantly ringing, **MS. DURIO** began to develop symptoms of severe anxiety, chronic insomnia, and chronic depression, which all hindered her ability to adequately perform her job.

14. Also in September - October 2006, **EVELYN BLANKS**, was harassed by **SLM FINANCIAL CORPORATION** and its collectors. During this time, **MS. BLANKS** was providing care for her increasingly ill husband; she was his sole caretaker. **MS. BLANKS** had also recently undergone quadruple bypass surgery. The harassment persisted despite **MS. DURIO** apprizing representatives of **SLM FINANCIAL CORPORATION** of the entire situation including the potential health repercussions to her mother and father. Because of the repeated harassment from **SLM FINANCIAL CORPORATION** and its collectors, **MS. BLANKS** suffered anxiety, became noticeably weaker, and suffered a severe relapse of shingles.

15. During November 2006, the frequency and abusive tone of the calls to both Plaintiffs considerably worsened, as did the health of **MS. DURIO's** father (whose death was at the time imminent), as did Plaintiffs' psychological and physical symptoms. Phones would ring on many occasions throughout the day, at times past 9:00pm. Also during this time, the conduct of a collection agent known by the fictitious name of **"MS. BROWN"** was especially abusive, threatening, vile, and reprehensible. When begged by **MS. DURIO** to stop calling her parents because her father was dying, **"MS. BROWN"** laughed and advised that she "could and would call as often as she liked."

16. During November 2006, **MS. DURIO**'s father, **MS. BLANKS**'s husband, died. Nonetheless, Plaintiffs endured repeated collection calls during Mr. Blanks's final stages of terminal illness and in the days before, day of, and days after his funeral ceremony, despite the fact that collection agents had been repeatedly informed that collection calls during this time would be inconvenient and emotionally damaging.

17. Also during November 2006, **MS. DURIO** suffered a complete emotional breakdown and lost her job. During this time, **MS. DURIO** was unable to pay for her cell phone. As a result, the calls to **MS. BLANKS** escalated considerably because **MS. DURIO** could not be reached, thereby causing **MS. BLANKS** additional adverse consequences, both physical and psychological.

18. During December 2006 - April of 2007, the incessant and abusive calls to **MS. BLANKS** persist, despite the facts that **MS. DURIO** got a new job and was making payments to **SLM FINANCIAL CORPORATION**.

19. During May 2007 - June of 2007, **MS. DURIO** continued to make payments to **SLM FINANCIAL CORPORATION** and faxed **SLM FINANCIAL CORPORATION** a written request to cease all phone calls to **MS. BLANKS**, noting **MS. BLANKS**'s current health condition as the primary reason. The fax also requested that all future contact with **MS. BLANKS** be made through writing only. A copy of the letter/fax is attached and referenced as "Exhibit A." Nonetheless, the harassing telephone calls to **MS. BLANKS** continued.

20. Also during June 2007, **MS. DURIO** attempted to pay a past due amount ($242.24) via telephone, and the **SLM FINANCIAL CORPORATION** customer service representative refused the payment on the assertion that the company only would accept payment in an amount greater than $500.00. In response, **MS. DURIO** faxed another letter to **SLM FINANCIAL CORPORATION** again requesting that the harassing calls to **MS. BLANKS** cease and apprising it of her recent debacle with the customer service representative. In the fax, **MS. DURIO** included a copy of the check for $242.24 to **SLM FINANCIAL CORPORATION** that she mailed on the same day. This letter/fax is attached and referenced as "Exhibit B."

21. In July 2007, **MS. DURIO** could not handle the stress and mailed in two checks; each one representing the amount due for one payment period. One of the checks was post dated. At this point **MS. DURIO** sent a third written request for **SLM FINANCIAL CORPORATION** to cease telephone contact with her mother, **MS. BLANKS**. Customer service representative and Defendant, **RYAN ALLABAUGH,** customer service representative of Defendant **SALLIE MAE, INC.** was copied with this written notice.   This letter/fax is attached and referenced as "Exhibit C."

22. Also in July 2007, **SLM FINANCIAL CORPORATION** deposited the post-dated check thereby causing **MS. DURIO's** car insurance draft to fall on insufficient funds, prevented her from having sufficient funds to pay her car insurance note, and causing her car insurance to be cancelled.

23. In August 2007, **MS. DURIO** received a letter from **RYAN ALLABAUGH** on behalf of **SALLIE MAE, INC.** acknowledging **SLM FINANCIAL CORPORATION's** cashing of the post-

dated check, admitting that collection calls to **MS. BLANKS** have persisted, and advising that **MS. BLANKS**'s telephone number was removed from **SLM FINANCIAL CORPORATION**'s on June 23, 2007. This letter is attached and referenced as "Exhibit D." Despite the promises and assertions made in this letter, the calls to **MS. BLANKS** persisted in the same systematic fashion that they have been conducted in since May 2006.

24. In September - October 2007, **MS. DURIO**'s symptoms of anxiety and her insomnia worsened. As a result, she saw a physician and was diagnosed with a permanent thyroid disorder brought on by prolonged periods of stress. The resulting fatigue became a more serious problem in **MS. DURIO**'s ability to function at work.

25. In October 2007, **MS. BLANKS** continues to receive calls from **"MS. BROWN"** that were threatening, harassing, intimidating, abusive, and shocking and appalling. In response, **MS. DURIO** faxed another letter to **RYAN ALLABAUGH** advising of the unabated calls to **MS. BLANKS** and detailing her intent to pursue legal action. This letter/fax is attached and referenced as "Exhibit E."

26. In November 2007, **MS. DURIO** wrote a letter to her attorney at the time, Stephen Morrow, detailing the FDCPA violations that she could identify. **RYAN ALLABAUGH** was copied with this correspondence.

27. In November 2007, **MS. DURIO** received a letter from **RYAN ALLABAUGH** advising actions were taken to remove **MS. BLANKS**'s telephone number from **SALLIE MAE, INC.**'s

records, including **SLM FINANCIAL CORPORATION**'s collection system. In the letter, **RYAN ALLABAUGH** also advised that calls had been made after the initial steps had been taken, apologized for the inconvenience, and noted that he spoke to representatives of **SLM FINANCIAL CORPORATION** who assured him that no further calls would be made to **MS. BLANKS**'s telephone number. A copy of this letter is attached and referenced as "Exhibit F." Nonetheless, the calls to **MS. BLANKS** persisted.

28. In November 2007, **MS. BLANKS** repeatedly received collection calls at her home. From this point forward, the collectors would ask for **MS. DURIO**. Collection calls to the home of **MS. BLANKS** persisted, despite the fact that earlier in the month, **MS. DURIO** had faxed two letters to **RYAN ALLABAUGH** that provided her (**MS. DURIO**'s) new cell phone number and that advised of **MS. BLANKS**'s failing health. Earlier in the month before faxing him the two letters, **MS. DURIO** copied **RYAN ALLABAUGH** on a letter to her attorney at the time, Stephen Morrow. A copy of the letter to Stephen Morrow is attached and referenced as "Exhibit G." The two letters/faxes to **RYAN ALLABAUGH** are attached and referenced as exhibits as "Exhibit H" and "Exhibit I" respectively. All parties involved possessed knowledge that **MS. DURIO** did not reside at **MS. BLANKS**'s home.

29. Also in November 2007, **MS. DURIO** spoke to a collector who called at **MS. BLANKS**'s home. In the conversation, the collector advised that **SLM FINANCIAL CORPORATION** had received no written request to cease collection calls to **MS. BLANKS**'s telephone number.

30. In January 2008, **MS. DURIO** received a collection call at work, despite her written request for Defendants to refrain from calling her at work.

### FIRST CAUSE OF ACTION
### (Against all defendants for violating the FDCPA)

31. Plaintiffs repeat, re-allege, and incorporate the foregoing paragraphs into the claim for relief by reference.

32. Defendants violated the FDCPA. Defendant's violations include, but are not limited to:

   a. Communicating with a third party for the purpose of identifying location information and failing to identify his or her employer upon request as mandated by 15 U.S.C. § 1692b(1);

   b. Communicating with a third party for the purpose of identifying location information and stating that the consumer owes a debt as prohibited by 15 U.S.C. § 1692b(2);

   c. Communicating with a third party for the purpose of identifying location information on more than one occasion in absence of the belief that the earlier response of the third party was erroneous or incomplete as prohibited by 15 U.S.C. § 1692b(3);

   d. Communicating with the consumer, without her prior consent, at times and places known to be inconvenient to the consumer as prohibited by 15 U.S.C. § 1692c(a)(1);

   e. Communicating with the consumer, without her prior consent, with knowledge that the consumer is represented by an attorney and with knowledge of the attorney's identity and contact information as prohibited by 15 U.S.C. § 1692c(a)(2);

   f. Communicating with the consumer, without her prior consent, at her place of

    employment with knowledge that the consumer's employer prohibits the receipt of such communications as prohibited by 15 U.S.C. § 1692c(a)(3);

g. Communicating with third parties in an attempt to collect the debt as prohibited by 15 U.S.C. § 1692c(b);

h. Failing to cease communication with a consumer/debt collection activities after receiving a written request to do so as prohibited by 15 U.S.C. § 1692c(c);

i. Engaging in harassing and abusive behavior in connection with the collection of a debt as prohibited by 15 U.S.C. § 1692d;

j. Engaging in harassing and abusive behavior in connection with the collection of a debt by using the threat of violence or other criminal means to harm the reputation and property of the consumer as prohibited by 15 U.S.C. § 1692d(1);

k. Engaging in harassing and abusive behavior in connection with the collection of a debt by using obscene and profane language as prohibited by 15 U.S.C. § 1692d(2);

l. Engaging in harassing and abusive behavior in connection with the collection of a debt by causing the telephone to ring repeatedly and continuously with the intent to annoy, abuse, and harass, as prohibited by 15 U.S.C. § 1692d(5);

m. Using false, misleading, and deceptive representations in connection with the collection of a debt as prohibited by 15 U.S.C. § 1692e;

n. Representing or implicating that nonpayment of the debt will result in the seizure, garnishment, attachment, and sale of the consumer's property in when the action could not lawfully be executed and in the absence of any actual intent to take such action as prohibited by 15 U.S.C. § 1692e(4);

o. Threatening to take action that cannot legally be taken as prohibited by 15 U.S.C. § 1692e(5);

p. Using false or deceptive means to attempt to collect a debt as prohibited by 15 U.S.C. § 1692e(10);

q. Using unfair or unconscionable means to attempt to collect a debt as prohibited by 15 U.S.C. § 1692f;

r. Failing to provide written notice of intent to deposit a post-dated check as prohibited by 15 U.S.C. § 1692f(2); and

s. Depositing a post-dated check before the date on the check as prohibited by 15 U.S.C. § 1692f(4).

t. Other violations of State and Federal law that will be proven at the trial of this matter.

33. Because they violated the FDCPA, the Defendants are liable to the Plaintiffs for declaratory judgment that their conduct violated the FDCPA, actual damages, statutory damages, all costs of these proceedings, and reasonable attorney's fees.

### SECOND CAUSE OF ACTION
**(Against all defendants for intentional infliction of emotional distress)**

34. Plaintiffs repeat, re-allege, and incorporate the foregoing paragraphs into the claim for relief by reference.

35. Defendants engaged in a continuous and systematic pattern of extreme, outrageous, and

unreasonable acts in seeking payment from Plaintiffs. The acts used by Defendants were directed at each plaintiff personally, go beyond the bounds of decency, and can be regarded as intolerable in a civilized community.

36. Defendants intended to cause each Plaintiff to suffer severe emotional distress and/or displayed reckless disregard for the probability of causing such distress.

37. As a result of the defendants' extreme, outrageous, and unreasonable conduct, plaintiff, **BECKY DURIO**, has suffered including but not limited to chronic insomnia, chronic depression, nightmares, headaches, anxiety, fear, loss of happiness, loss of concentration, feelings of instability, feelings of constant embarrassment, feelings of constant humiliation, feelings of constant intimidation, feelings of constant irritability, and prolonged stress that led to the development of a permanent thyroid condition.

38. As a result of the defendants' extreme, outrageous, and unreasonable conduct, plaintiff, **EVELYN BLANKS**, has suffered damages including, but not limited to loss of happiness, severe depression, feelings of constant intimidation, and feelings of constant irritability. **EVELYN BLANKS** has endured harassment during the final stages of her husband's life, immediately after his death, and during his funeral. The actions of Defendants have also caused **MS. BLANKS's** heart condition to become exacerbated, **MS. BLANKS** to contract a severe case of shingles, and a general deterioration in **MS. BLANKS's** health.

## THIRD CAUSE OF ACTION
### (Against all defendants for intentional infliction of emotional distress)

39.  Plaintiffs repeat, re-allege, and incorporate the foregoing paragraphs into the claim for relief by reference.

40.  Defendants engaged in a continuous and systematic pattern of extreme, outrageous, and unreasonable acts in seeking payment from Plaintiffs. The acts used by Defendants systematically violated legal duties and/or statutory duties owed to each plaintiff.

41.  As a result of Defendants' acts, plaintiff, **BECKY DURIO**, has suffered damages including but not limited to those referenced in paragraph 37 of this complaint.

42.  As a result of Defendants' acts, plaintiff, **EVELYN BLANKS**, has suffered damages including but not limited to those referenced in paragraph 38 of this complaint.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs, **BECKY DURIO** and **EVELYN BLANKS**, respectfully request that judgment be entered against Defendants, **SLM FINANCIAL CORPORATION, SALLIE MAE, INC., RYAN ALLABAUGH, JANE DOE, and DOES 1-50, inclusive,** as follows:

(A)  Declaratory judgment that Defendant's conduct violated the FDCPA;

(B)  Actual damages in amount to be set by this court allowed under under 15 U.S.C. § 1692k(1);

(C)  Statutory damages in the amount of $1000.00 per each determined violation under 15

U.S.C. § 1692k(2);

(D) Costs and reasonable attorney's fees under 15 U.S.C. § 1692k(3);

(E) Special Damages under Louisiana Law in an amount to be set by this court;

(F) General Damages under Louisiana Law in an amount to be set by this court; and

(G) All other just and equitable relief.

Respectfully Submitted,

GALLOWAY JEFCOAT, L.L.P.

BY: MICHAEL L. BARRAS (30855)
1925 Dulles Drive
Post Office Box 61550
Lafayette, Louisiana 70596
(337) 984-8020 *(Telephone)*
(337) 984-7011 *(Facsimile)*
*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

BECKY DURIO and
EVELYN BLANKS

**6:08cv0615   LO**

versus

SLM FINANCIAL CORPORATION, et al        MAGISTRATE:

---

### VERIFICATION

**STATE OF LOUISIANA**

**PARISH OF LAFAYETTE**

Before me, the undersigned authority, personally came and appeared:

**BECKY DURIO**

who after being duly sworn, did attest and say that she is the petitioner in the above-captioned action, that she has read the petition, and that all allegations of fact contained therein are true to the best of her knowledge, information, and belief.

_____
BECKY DURIO

SWORN TO AND SUBSCRIBED, before me, in Lafayette, Louisiana on this 24th day of April, 2008.

_____
MICHAEL L. BARRAS
NOTARY/BAR ROLL # (85495/30855)

Page 17 of 17

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

BECKY DURIO and
EVELYN BLANKS

**6:08cv0615   LO**

versus

SLM FINANCIAL CORPORATION, et al        MAGISTRATE:

---

### VERIFICATION

STATE OF TEXAS

COUNTY OF ERATH

Before me, the undersigned authority, personally came and appeared:

**EVELYN BLANKS**

who after being duly sworn, did attest and say that she is the petitioner in the above-captioned action, that she has read the petition, and that all allegations of fact contained therein are true to the best of her knowledge, information, and belief.

*Evelyn Blanks*
EVELYN BLANKS

SWORN TO AND SUBSCRIBED, before me, in Stephenville, Texas on this 28 day of April, 2008.

*Stephanie Kunselman*
NOTARY PUBLIC, STATE OF TEXAS

STEPHANIE KUNSELMAN
Notary Public
STATE OF TEXAS
My Comm. Exp. 04/09/2011

Law Offices of

# GALLOWAY JEFCOAT, L.L.P.

1925 Dulles Drive
Post Office Box 61550
Lafayette, Louisiana 70596-1550

Thomas "Rusty" Galloway, A.P.L.C.
John M. Jefcoat, A.P.L.C.
Robert M. Martina
D. Patrick "Rick" Keating, A.P.L.C.
Brandy L. Dupuis
Michael L. Barras

Phone:      (337) 984-8020
Fax:         (337) 984-7011
Toll Free:  (800) 260-3839
www.gallowayjefcoat.com

May 6, 2008

**Via Hand Delivery**

Honorable Robert H. Shemwell
Clerk of Court, United States District Court
Western District of Louisiana
800 Lafayette Street
Lafayette, Louisiana 70501

Re:   **Becky Durio and Evelyn Blanks**
       *versus*
       **Sallie Mae, Inc., SLM Financial Corporation,
       Ryan Allabaugh, Jane Doe, and Does 1-50, inclusive**
       **Our File Nos.    081308, 081309**

Dear Honorable Clerk:

Please find enclosed the original Civil Cover Sheet and the original and three copies of a complaint for damages along with the attached Summons in a Civil Action forms. Please process the Summons in a Civil Action forms and corresponding copies of the complaint for service upon the defendants. Please also return a file-stamped certified copy to the courier delivering this correspondence.

I have enclosed a check from our firm in the amount of $350.00 representing filing fees.

If you have any questions or concerns, please do not hesitate to contact my office.

With kind regards, I am,

Sincerely,

Michael L. Barras
Galloway Jefcoat, L.L.P.
MLB/
Enclosures